**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

ISAI PONCE MUNOZ,

      Petitioner,

      v.

BLANCA ESTELA BUENROSTRO DIAZ,

      Respondent.

CIVIL ACTION NO.: 4:22-cv-9

## O R D E R

In a prior Order in this case, the Court granted Petitioner's Petition for the return of H.E.P.B. and E.I.P.B. (the "Children"), the biological children of Petitioner and Respondent, to Petitioner's custody in Mexico.  (Doc. 66.)  The Court found that Respondent had wrongfully removed the Children to the United States from Mexico, which was the place of their habitual residence, and that Respondent had failed to prove her claim that the Children would face a grave risk of harm if returned to Mexico.  (See generally id.)  At the conclusion of the prior Order, the Court deferred ruling on Petitioner's request for the recovery of attorneys' fees and costs pursuant to 22 U.S.C. § 9007(b)(3), (id. at pp. 25–26), and the Court later ordered Petitioner to file an application and motion, and for the parties to thereafter file responsive briefs on the topic, (doc. 78, pp. 3–4).  Presently before the Court is Petitioner's Motion and Application for Award of Fees and Costs.  (Doc. 84.)  Respondent has neglected to file any response or to express any objections to Petitioner's request for attorneys' fees and costs.  As more fully explained below, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion, (doc. 84).

**BACKGROUND**

This action, brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act, was initiated by Petitioner Isai Ponce Munoz's filing of a "Verified Petition for Return of Child[ren] to Mexico" against Respondent Blanca Estela Buenrostro Diaz. (Doc. 1.)  Following an abbreviated discovery period, the Court held a two-day evidentiary hearing, without a jury. (See docs. 63, 64.)   During the hearing, the parties presented 17 joint exhibits (including lengthy print-outs of text messages exchanged between the parties), one additional separate exhibit apiece, and testimony from multiple witnesses (including Mexican attorneys who testified as competing experts on parental legal rights in Mexico—and specifically Baja California, where the parties originally resided). Before the conclusion of the hearing, Respondent conceded that the Children were habitual residents of Mexico at the time of their removal to the United States, but she continued to contest Petitioner's position that he had and was exercising custody rights, as required to obtain relief pursuant to the Hague Convention.

On April 12, 2022, the Court issued an Order, which included a thorough "Findings of Fact" section that reviewed all of the testimony and exhibits.  (See doc. 66, pp. 3–13.)  The Court incorporates by reference herein that entire section (Background Section III of the April 12, 2022, Order).  Based on those factual findings, the Court concluded that Petitioner had *patria potestad* rights, which include rights of custody, and the Court also found that Petitioner was exercising those rights at the time the Children were removed from Mexico. (Id. at pp. 15–20.)  Accordingly, the Court also found that Respondent's removal of the children to United States (and ensuing refusal to return them to Mexico) was "wrongful" pursuant to the Hague Convention.  (Id. at p.

20.)  The Court also found that Respondent had failed to prove that the Children faced a grave risk of danger if returned to Mexico.  (Id. at pp. 20–25.)

After hearing from the parties during a follow-up telephonic status conference, the Court entered an Order requiring Respondent to release the Minor Children into the custody and care of Petitioner by 6:00 p.m. EST on Friday, May 20, 2022, and requiring Petitioner to accompany the Children on a flight departing from the Savannah/Hilton Head International Airport (and any necessary additional flights, with a final destination of Baja California, Mexico), no later than 6:00 p.m. EST on Sunday, May 22, 2022.  (Doc. 78.)  The Order also set deadlines for Petitioner to file any application for fees, costs and expenses, for Respondent to file any opposition, and for Petitioner to file any reply.  (Id. at p. pp. 3–4.)

Following that hearing, Petitioner's counsel learned that the Children's Mexican passports had expired in May 2021.  On May 19, 2022, Petitioner traveled from Baja, California, Mexico, to Savannah, Georgia.  (Doc. 84, p. 12.)  In order to have the Children's expired passport issue expeditiously resolved so that the Children could be returned to Mexico in compliance with the timeline ordered by the Court, Petitioner and the Children then traveled to the Office of the Consulate General of Mexico, in Atlanta, Georgia, where the Children were issued Presumptions of Nationality on May 20, 2022.  (Id. at p. 6.)  The following day, Petitioner and the Children flew from Atlanta, Georgia, to San Diego, California, where they were driven by vehicle back to Baja California, Mexico.  (Id.)

Petitioner has since filed the at-issue Motion, requesting $69,513.75 in attorneys' fees and $7,077.42 in costs and expenses, for a total award request of $76,591.17.  (See generally id.)  Respondent failed to file any response or to voice any opposition thereto.

**STANDARD OF REVIEW**

The Hague Conference on Private International Law adopted the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11, in 1980 "[t]o address the problem of international child abductions during domestic disputes." Lozano v. Montoya Alvarez, 572 U.S. 1, 4 (2014) (internal quotation marks omitted).

In 1988, the United States ratified the Convention and passed the International Child Abduction Remedies Act ("ICARA"), 102 Stat. 437, as amended, 22 U.S.C. § 9001, *et seq.*, the implementing legislation in the United States. See 22 U.S.C. §§ 9001, *et seq.* The treaty was ratified between the United States and Honduras on June 1, 1994. See U.S. Hague Convention Treaty Partners, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited December 30, 2022). ICARA's provisions "are in addition to and not in lieu of the provisions of the Convention." 22 U.S.C. § 9001(b)(2). With respect to the award of attorneys' fees and costs, ICARA provides, in pertinent part, as follows:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). An award of fees and costs serves two purposes: (1) "to restore the applicant to the financial position he or she would have been in had there been no removal or retention," and (2) "to deter such removal or retention." DEPARTMENT OF STATE, HAGUE INTERNATIONAL CHILD ABDUCTION CONVENTION; TEXT AND LEGAL ANALYSIS, 51 Fed. Reg. 10494–01, 10511. The Eleventh Circuit Court of Appeals has "read the statutory text as creating

a strong presumption in favor of fee-shifting, rebuttable only by a showing from the losing respondent that an award of attorney's fees, costs and expenses would be clearly inappropriate." Rath v. Marcoski, 898 F.3d 1306, 1311 (11th Cir. 2018).  The Eleventh Circuit has suggested that there are two circumstances under which an award under Section 9007(b)(3) is "clearly inappropriate."  Id.  The first is when "a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child."  Id.  The second is when "a respondent had a good faith belief that [his] actions in removing or retaining a child were legal or justified."  Id.  The "substantial burden of establishing that a fee award is clearly inappropriate" lies with the losing respondent.  Id.

Accordingly, the Court will first assess "whether the [P]etitioner's requested [expenses] were 'necessary,'" and then it will turn to "whether an award of such [expenses] would be 'clearly inappropriate in light of [Respondent's] financial circumstances, subjective good faith in [her] actions, or other equitable circumstances that suggest further diminution is just.'"  Moonga v. Moonga, No. 1:17-cv-2136-TWT, 2018 WL 4026020, at *1 (N.D. Ga. Aug. 23, 2018) (quoting Fuentes-Rangel v. Woodman, No. 2:14-cv-00005-WCO, 2015 WL 12999707, at *1 (N.D. Ga. July 29, 2015)).

## DISCUSSION

### I.     Necessary Fees and Expenses

#### A.     Attorneys' Fees

Petitioner requests a total of $64,998.25 in attorneys' (and paralegal) fees.  (Doc. 84, pp. 6–11.)  Petitioner provided an affidavit from each of the five attorneys who worked on his case. (Docs 84-1, 84-2, 84-3, 84-4, 84-5.)  In each affidavit, the affiant provides some information about his or her professional background and years of experience as an attorney and also provides his or

her typical hourly rate.  They also each "verify" that their own rate, as well as the rates of the other

four attorneys and the paralegals who worked on the case, are "reasonable and customary, if not

lower than those in the community."  (See doc. 84-1, p. 3; doc. 84-2, p. 3; doc. 84-3, pp. 2–4; doc.

84-4, p. 2; doc. 84-5, p. 2.)  Petitioner also provided sixty pages of time sheets reflecting work

performed by each attorney and each paralegal.  (See doc. 84-7.)

The Court's inquiry is guided by the lodestar framework.  See Fuentes-Rangel, 2015 WL

12999707, at *1 (citing Distler v. Distler, 26 F. Supp. 2d 723, 727 (D.N.J. 1998)); see also Moonga,

2018 WL 4026020, at *2; Neves v. Neves, 637 F. Supp. 2d 322, 339 (W.D.N.C. 2009) (collecting

cases).  The "lodestar" amount is generally recognized as "the reasonable sum the attorneys

deserve."  Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008).  The Court calculates

the lodestar by "multiply[ing the] hours reasonably expended by a reasonable hourly rate."[1]

Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  A

reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar

services by lawyers of reasonably comparable skills, experience, and reputation."  Id.

---

[1]  This determination presumptively includes consideration of the twelve factors articulated in Johnson v.
Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974).  See Norman v. Housing Auth. of City
of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (noting that the lodestar is the controlling figure but
that the Johnson factors may "have utility").  Those factors are: (1) the time and labor required; (2) the
novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the
preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether
the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount
involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the
"undesirability" of the case; (11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.  Johnson, 488 F.2d at 717–19.

Here, Petitioner seeks attorneys' fees for the specified number of hours expended by the following individuals at the specified hourly rate:

| | | |
|---|---|---|
| Michael Manely | .6 hours | $500/hour |
| David Purvis | 1.5 hours | $350/hour |
| | 43.5 hours | $385/hour |
| | 3.5 hours | $420/hour[2] |
| Jess Lill | 1.35 hours | $330/hour |
| Alisha Esselstein | 7.85 hours | $225/hour |
| | 60.85 hours | $250/hour[3] |
| Maria Justus | .5 hours | $300/hour |

(Doc. 84, pp. 6–8, 10; doc. 84-7.)

Petitioner also seeks to recover for work performed by the following paralegals:

| | | |
|---|---|---|
| Catherine Gonzalez | 1.2 hours | $190/hour |
| | .2 hours | $205/hour |
| Stephanie McCollum | .15 hours | $190/hour |
| Karen Perez | 2.6 hours | $165/hour |
| | 30.95 hours | $180/hour |
| Yolanda Lopez | 17.7 hours | $135/hour |
| | 119.9 hours | $150/hour |
| Alyssa Gay | .4 hours | $115/hour |
| | 6.45 hours | $125/hour |
| | 6.05 hours | $135/hour[4] |
| Avery Landt | .3 hours | $135/hour |

(Doc. 84, pp. 8–10.)

---

[2] In February 2022, Mr. Purvis's hourly rate apparently increased from $350 per hour to $385 per hour, and in May 2022 it increased again to $420 per hour, which remained his hourly rate as of the time the Motion for Fees and Costs was filed. (Doc. 84, p. 7.)

[3] In February 2022, Ms. Esselstein's hourly rate apparently increased from $225 per hour to $250 per hour.

[4] In February 2022, paralegals Lopez and Gay's hourly rates increased from $135 per hour to $150 per hour, and from $115 per hour to $125 per hour, respectively. (Doc. 84, p. 9 nn.8–9.) In May 2022, paralegal Gay's hourly rate increased again, this time to $135 per hour. At the same time, paralegal Perez's rate was increased from $165 per hour to $180 per hour. (Id. at p. 9 nn.7, 9.)

### 1.     Reasonable Hours Expended

The Court notes at the outset that "cases involving child abduction are necessarily time-sensitive, and this case was no exception in that regard."  Neves, 637 F. Supp. 2d at 343. Additionally, the Court finds that the fact that Petitioner did not speak English and the fact that Petitioner (unlike Respondent) lived not only outside of this country, but clear across the continent from this District, further complicated Petitioner's ability to prepare his case with his lawyers and contributed to the need for a multi-member legal team.  Accordingly, the Court finds that, in this case in particular, an all-hands-on-deck approach was not unreasonable.

Nonetheless, "[w]hen multiple attorneys are involved, the Court must consider whether they are being compensated for their distinct contributions or whether there is duplication." Hamprecht v. Hamprecht, No. 2:12-cv-125-FtM-29DNF, 2013 WL 1155675, at *4 (M.D. Fla. Mar. 14, 2013) (citing Johnson v. Univ. Coll. of Univ. of Ala., 706 F.2d 1205, 1208 (11th Cir. 1983)).  Here, following review of the submitted time sheets, the Court does have some concerns that the attorneys and paralegals working on the case, at times, billed for duplicative work (i.e., they submitted bills from multiple individuals for the same internal discussions and communications).  (See, e.g., doc. 84-1, pp. 7–8, 11, 14–16, 20, 22, 24–27, 29–30, 33–35, 37–42, 47–48, 56.)  Given the nature and time-constraints involved in this case, "the Court finds a certain amount of consultation among the Petitioner's attorneys to be reasonable."  Neves, 637 F. Supp. 2d at 343 (citing Wasniewski v. Grzelak-Johannsen, 549 F.Supp.2d 965, 976 (N.D. Ohio 2008)); see also Moonga, 2018 WL 4026020, at *3 (time billed by an associate for communicating with a partner regarding status of the case or strategy was not unreasonable and unnecessarily billed "law firm management" time but was compensable case strategy necessary for seeking to win the case). The Court, however, finds that the specific amount of conferencing and communicating with co-counsel (particularly given the number of attorneys involved) to be "somewhat redundant and duplicative."  Neves, 637 F. Supp. 2d at 343.  "In complicated cases, involving many lawyers,

8

deducting a small percentage of the total hours may be used to eliminate duplication of services." Id. (quoting Freier v. Freier, 985 F. Supp. 710, 712 (D.N.J. 1997)).

Additionally, the Court's review of the time sheets indicated that, at times, paralegals billed for work that would be considered clerical tasks. (See, e.g., doc. 84-7, pp. 1, 7, 11, 16, 18, 21, 28, 33, 41 (time entries for creating a physical file and/or "file maintenance," such as printing and placing documents in the physical file, adding information to the physical or electronic file, or organizing the file); id. at pp. 24, 56 (calendaring deadlines and hearing dates); id. at p. 35 (redacting information from documents).) In order for paralegal fees to be recovered as part of the attorney fee award, the paralegal must be engaged in non-clerical tasks or work traditionally done by an attorney within the scope of permissible fees. See Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Incardone v. Royal Carribean Cruises, Ltd., No. 16-20924-CIV, 2019 WL 8989850, at *9 (S.D. Fla. Mar. 18, 2019) ("To the extent that [paralegal fees] concern work traditionally done by an attorney and are encompassed within the scope of permissible fees here, they are recoverable.") (citing cases); Palavicini v. Wal-Mart Stores E., LP, No. 18-20708-CIV, 2019 WL 3769266, at *3 (S.D. Fla. Jan. 31, 2019) ("A paralegal's time is compensable to the extent the paralegal performed non-clerical tasks, including drafts of pleadings, proposals for settlement, and preparing expert disclosures.").

Finally, the time sheets include time billed at paralegal rates by paralegals Gay and Perez for their respective time spent driving Petitioner and the Children to Atlanta for an appointment with the Consulate General to address the Children's expired passports. (Doc. 84-1, p. 55 (5.7 hours billed by Gay and 9 hours billed by Perez).) However, the provision of transportation services does not constitute non-clerical legal work in support of the proceedings, and Petitioner has not provided evidence of the market rate charged by a driver/chauffer for their driving time.

Accordingly, the Court will strike the driving time from Gay and Perez's respective hours of paralegal work billed, and will address these travel costs in the travel section, infra.

Accordingly, the Court will strike 5.7 hours from Gay's total hours billed and 9 hours from Perez's total hours billed.  The Court will thereafter exercise its discretion to efficiently reduce the hours billed by fifteen percent (15%) to account for the portion of redundant and duplicative billing that was likely not necessary as well as for the portion of the billing that covers time spent on clerical or administrative (non-legal) tasks.

### 2.      Reasonable Hourly Rates

Petitioner's brief and the attorneys' affidavits recite basic background information and the typical hourly rate charged by each attorney (and each paralegal), and the affidavits include each attorney's "verif[ication]" that the hourly rates are "reasonable and customary, if not lower than those in the community." (See doc. 84-1, p. 3; doc. 84-2, p. 3; doc. 84-3, pp. 2–4; doc. 84-4, p. 2; doc. 84-5, p. 2.)  Petitioner did not provide any other evidence to help demonstrate the prevailing market rates of attorneys and/or paralegals for similar cases in those markets, such as affidavits from other attorneys in the Southern District of Georgia.  Notably, it is well-established in the Eleventh Circuit that:

> [t]he applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. NAACP v. City of Evergreen, Ala., 812 F.2d 1332, 1338 (11th Cir. 1987).  Satisfactory evidence at a minimum is *more than the affidavit of the attorney performing the work.* Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).  It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. *Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.* See Hensley v. Eckerhart, 461 U.S. 424, 439 n.15 (1983).  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.  The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

Norman, 836 F.2d at 1299 (emphases added).  Accordingly, Petitioner has failed to provide the kind of objective evidence required to support the hourly rates he requests, and the Court thus must rely primarily on its own expertise to calculate the appropriate hourly rates.[5]  Neves, 637 F. Supp. 2d at 341–42 ("In the absence of specific evidence regarding the prevailing market rate, the Court may establish a reasonable rate based upon its own knowledge and experience of the relevant market . . . ."); see also Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) ("A court, however, 'is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'") (quoting Norman, 836 F.2d at 1303).  The Court first reviews the limited evidence it has before it regarding each attorney and each paralegal.

Michael Manely is the founding attorney of the Manely Firm and has nearly thirty-three years of experience.  (Doc. 84-1, p. 1.)  He practices primarily in the metro-Atlanta area, and he specializes in "family law, international family law, and Hague Abduction Convention work in the United States," and he has "served as an expert witness on Hague Abduction Convention matters." (Id. at p. 2.)  He bills at a rate of $550 per hour.  (Id.)

David Purvis is a partner in the Manely Firm, is based in Savannah, Georgia, and has roughly twelve years of experience.  (Doc. 84-2, p. 1.)  According to his affidavit, his practice focuses exclusively on family law, and he has handled "numerous complex family law cases and [has] argued before the Georgia Supreme Court on issues involving assisted reproductive technologies and other cutting[-]edge issues in family law."  (Id. at p. 2.)  He bills at a rate of $420 per hour.  (Id.)

---

[5]  This is not to say that Petitioner's evidence (the affidavits of his attorneys) will not be given *any* weight. Respondent failed to provide any affidavits to show what she might contend would be reasonable hourly rates for each attorney and each paralegal.  Thus, the Court gives *some* consideration to Petitioner's evidence, but will rely more heavily on its own objective expertise.

Three associate attorneys with the Manely Firm also worked on this case. According to their affidavits, Jess Lill primarily practices in Savannah, has four years of experience practicing exclusively family law, and bills at a rate of $360 per hour (though her limited work in this case was billed at a rate of $330 per hour), (doc. 84-3); Alisha Esselstein primarily practices in Savannah, has one year of experience and currently bills at $275 per hour (though she billed her work in this case at the rates of $225 and $250 per hour), (doc. 84-4); and Maria Justice practices primarily in Savannah, has three years of experience and bills at $300 per hour, (doc. 84-5).

As for paralegals, there are no affidavits providing information about their years of experience or background, other than references to the fact that Gonzales, Perez and Lopez have "bilingual qualifications," (doc. 84-3, p. 3), and the fact that Gay and Landt are apparently considered "junior" paralegals, (doc. 84-1, p. 3). In his brief, Petitioner provides additional information (without citations to any supporting evidence in the record) about each paralegal's background, experience, and hourly rates. (See doc. 84, pp. 8–9.) Notably, while the brief indicates that McCollum (who bills at $190 per hour) has twelve years of experience as a paralegal, the brief also indicates that Lopez (who bills at $150 per hour) has only one year of paralegal experience, Perez (who bills at $180 per hour) has only two years of paralegal experience, and Gonzalez (who bills at $205 per hour) has only four years of paralegal experience.[6] (Id.) Meanwhile, the brief also indicates that "junior paralegals" Gay and Landt each have less than one year of experience in family law and that neither of them held a paralegal certificate at the time the brief was filed. (Id. at p. 9.)

After considering the information before it and relying on its own expertise and recent attorneys' fees awards in this district, the Court finds that reductions in almost all of Petitioner's

---

[6] The Court acknowledges that Lopez, Perez and Gonzalez are bilingual; however, Petitioner has not shown how the ability to translate documents or conversations constitutes an extraordinary expertise or skill that would support an heightened hourly rate for *paralegal* work.

requested rates are appropriate.  First, as to Michael Manely, because of his experience with Hague Convention cases (in addition to his years of practice and his status as the founding partner in his firm), the Court finds $375 per hour to be a reasonable hourly rate for him in the Savannah market. As to David Purvis, based on years of experience, the type of work he contributed to the case, and the fact that he is known to the Court to have previous experience with this specific type of case, the Court finds that he should be compensated at a rate of $325 per hour.  As for associate Jess Lill (who has four years of experience and is known to the Court to have prior experience handling this specific type of case), the Court finds $250 per hour to be an appropriate hourly rate.  As for associates Alisha Esselstein and Maria Justus, based on their limited practice experience (particularly in this specific context), the Court reduces their hourly rates to $225 per hour.  See Milie v. City of Savannah, No. 4:18-CV-117, 2020 WL 4041118, at *5 (S.D. Ga. July 16, 2020) (reducing three partners' hourly rates from $350 to $300 and reducing associate's rate from $275 to $225 per hour for work on case in Savannah); Neville v. McCaghren, No. 6:17-cv-075, 2019 WL 1085197, at *1 (S.D. Ga. Mar. 7, 2019) (approving rates of $225 and $250 per hour in Statesboro and noting "the Court has previously approved" rates of $300 for Augusta and $250 for Savannah); Henry v. Cmty. of Hope Ctr., Inc., No. CV 314-118, 2017 WL 9482067, at *2 (S.D. Ga. Apr. 27, 2017) (setting rate at $275 for Dublin market); Plumbers & Steamfitters Local No. 150 Pension Fund v. Muns Grp., Inc., No. CV 1:15-0200, 2017 U.S. Dist. LEXIS 41258, at *3 (S.D. Ga. Mar. 22, 2017) (citing ECF No. 34-1) (reducing hourly rate for Augusta market to $400/hour for attorneys with over forty years of experience and $300/hour for attorneys with twelve and fourteen years).

Finally, the Court finds—based on its own knowledge and expertise—that the requested rates for all paralegals are too high for the Savannah market.  Accordingly, the Court reduces all of their requested rates and will apply the following rates: $125 per hour for paralegal Gonzalez; $150 per hour for paralegal McCollum; $100 per hour for paralegals Perez and Lopez; and $75

13

per hour for "junior paralegals" Gay and Landt.  See United States v. Patrol Servs., Inc., 202 F.

App'x 357, 364 (11th Cir. 2006) (affirming reduction of paralegal fee where movants left the

paralegal's qualifications out of the affidavit in support of the fees); Milie, 4:18-CV-117, 2020

WL 4041118, at *6  (reducing seven paralegals' rates—for work on a Savannah case—from $125

to $95 per hour in light of Plaintiff's failure to present any evidence as to the respective levels of

experience and lack of evidence any of them "possess[] some extraordinary qualifications or

expertise"); Plumbers & Steamfitters, No. 1:15-cv-0200, 2017 U.S. Dist. LEXIS 41258, at *3

(applying uniform rate of $100 per hour for work on Augusta case); Jackson v. Jump, No. 2:12-

cv-135, 2014 WL 10558844, at *3 (S.D. Ga. Sept. 30, 2014) (approving rate of $85 per hour in

Brunswick).

Using the foregoing determinations, the Court turns to the calculation of the lodestar, which

is done by multiplying each timekeeper's reasonable hourly rate by the hours reasonably expended

by each timekeeper.  See Norman, 836 F.2d at 1299.

| Michael Manely | .5 hours | @ | $375/hour | = | $187.50 |
|---|---|---|---|---|---|
| David Purvis | 41.2 hours | @ | $325/hour | = | $13,390.00 |
| Jess Lill | 1.1 hours | @ | $250/hour | = | $275.00 |
| Alisha Esselstein | 58.4 hours | @ | $225/hour | = | $13,140.00 |
| Maria Justus | .4 hours | @ | $225/hour | = | $90.00 |
| Catherine Gonzalez | 1.2 hours | @ | $125/hour | = | $150.00 |
| Stephanie McCollom | .1 hours | @ | $150/hour | = | $15.00 |
| Karen Perez | 20.9 hours | @ | $100/hour | = | $2,090.00 |
| Yolanda Lopez | 117 hours | @ | $100/hour | = | $11,700.00 |
| Alyssa Gay | 6.1 hours | @ | $75/hour | = | $457.50 |
| Avery Landt | .3 hours | @ | $75/hour | = | $22.50 |
| | | | **TOTAL** | | **$41,517.50** |

14

**B.** **Litigation-Related Expenses**

      **1.** **Filing, printing and obtaining documents**

Petitioner seeks to recover $1,015.50 in costs incurred for filing and printing documents and for obtaining certified copies of documents. (Doc. 84, pp. 10–11.) Petitioner's Motion does not provide any sort of helpful itemization for the Court regarding the various charges he incurred within in each of the three enumerated categories (i.e., filing, printing, and obtaining), much less does it state why any of these expenses were necessary. (See id.) Indeed, the Motion does not even cite to any specific exhibits in support of the at-issue costs.

In its review of the docket and the exhibits to the Motion, the Court has observed some limited potential support for at least part of the requested amount. As for printing, the Manely Firm's billing statement contains one entry for "Printing, Copies, and Fax," but it only reflects a charge of $2.46, (see doc. 84-7, p. 22), and neither this entry nor Petitioner's briefing provides any detail as to what was copied, printed and/or faxed, much less why such was necessary for purposes of this case. Accordingly, Petitioner has not made the necessary showing to warrant an award of printing costs. Additionally, the Court cannot find any evidentiary support in the record for the certified copies Petitioner claims he was required to obtain.[7] Accordingly, he has not made the necessary showing to warrant an award of costs for obtaining certified copies. However, regarding filing costs, the docket indicates that Petitioner paid $402 on January 20, 2022, as the fee for filing this case. The necessity of paying this expense is self-evident, and the Court will therefore order reimbursement of that amount. Thus, of the $1,015.50 requested by Plaintiff for this category of expenses, the Court awards Petitioner $402 for reimbursement of the filing fee.

---

[7] Counsel must remember that "[j]udges are not like pigs, hunting for truffles buried in [the record]." U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991).

**2.    Expert Witness Fees**

Next, Petitioner seeks to recover the $3,500.00 he paid to Ms. Jesus Acosta Urias, who served as his expert witness on Mexican family law.  (Doc. 84, pp. 10–11; see also doc. 84-6.) During the hearing in this case, Ms. Urias provided expert opinions on the issue of whether Petitioner's custody rights under Mexican law are "rights of custody" under the Convention.  Such services were clearly necessary to establish Petitioner's entitlement to the return remedy, as contemplated by the Convention.  See Perez–Vera Report ¶ 101, at 456–57 ("[P]roof of the substantive law of the State of the child's habitual residence may be established by . . . affidavits . . . from . . . an attorney, solicitor, or barrister."); Hague Convention, art. 3.  However, while Petitioner provided five invoices for $700 each, as well as what Petitioner describes as a "letter from Attorney Urias to Petitioner outlining in greater details the services that were rendered," (doc. 84, p. 11), the invoices and the "letter" (which is not signed by anyone and does not appear to reveal who authored it) are written in Spanish and no translation has been provided.  (See doc. 84-6.)  The only discernable date on the invoices is "2022-05-26" (with this same date appearing on all five invoices), which is well after the hearing in the case.  (Doc. 84-6, pp. 1–5.)  Accordingly, the Court is unable to satisfy itself that all—or any specific part—of the $3,500 charged by Ms. Urias was indeed for work that was necessary to this case (as opposed to, for instance, other legal matters involving Petitioner and Respondent that were pending in Mexico, which was described in testimony given during the evidentiary hearing).[8]

---

[8] Because Petitioner did not provide evidence from which the Court could determine Ms. Urias's hourly rate(s), the Court cannot, for instance, calculate and award the amount she would have charged for the time she spent testifying at the hearing.

### 3.   Interpreter Costs

Next, Petitioner requests reimbursement of the amounts he paid for interpreters who assisted with the hearing conducted on March 28, 2022, and March 29, 2022.  (Doc. 84, p. 16.) According to the documentation supplied by Petitioner, those interpreters charged as follows: Gonzales Interpreting, LLC charged $480.00 for interpretation services on both final hearing dates; Quality Interpretations, LLC charged $1,125.00 for interpretation services on both final hearing dates; Marianne McEvoy also charged $1,125 for interpretation services on both final hearing dates; and M. Antonio Gavilanez charged $2,718.46 for interpretation services on both final hearing dates.  The total for all interpretation services was $5,427.16.  (Doc. 84-17.)  According to Petitioner, the parties agreed to split the cost of the interpreters and, as a result, Petitioner paid $2,713.58 for interpreters.  Petitioner seeks reimbursement for this amount (his share of the costs). The Court finds that this was a necessary expense incurred by Petitioner and therefore awards the requested amount.

### 4.   Travel-Related Expenses

Petitioner claims he is entitled to an award totaling $4,363.84 for the costs he incurred to attend Court proceedings in Georgia and the costs he incurred to later travel back to Georgia and return the Children to Mexico.  (Doc. 84, pp. 11–19.)  Section 9007(b)(3) specifically states that the prevailing party is entitled to "transportation costs related to the return of the child[ren]," if such costs are shown to be "necessary expenses." 22 U.S.C. § 9007(b)(3).  There can be no dispute that it was necessary for Petitioner to travel from Mexico to Georgia to attend the hearing in the case.  Petitioner has provided adequate support for the $685.39 he spent for hotel accommodations, for transportation between his hotel, his counsel's office and the courthouse, and for one meal during that time period.  (Doc. 84-8.)  He also has provided adequate support for the $541.36 he

paid for flights to and from Savannah to attend the Court proceedings.  (Doc. 84-13.)  Accordingly, Petitioner is entitled to recover those expenses totaling $1,226.75.

Petitioner also seeks reimbursement for amounts he paid for hotel accommodations and travel expenses that were necessary during his retrieval of the Children from Savannah (to return them to Mexico).   Specifically, he seeks reimbursement for $74.00 that he spent on hotel accommodations in Savannah, Georgia, on May 19, 2022 (when he arrived to retrieve the Children).  (See doc. 84, p. 12; doc. 84-9.)  The Court finds this expense was both necessary and reasonable.  He also seeks to recover $341.04 for the (mileage-based) cost of ground transportation from Savannah to the Office of the Consulate General in Atlanta and $24.89 for a meal he and the Children ate during that trip.  Petitioner provided documentation to support these amounts, which the Court finds to have been reasonable and necessary.  (See docs. 84-10, 84-11.)  Accordingly, the Court will permit Petitioner to recover $365.93 for expenses related to his and the Children's travel to Atlanta to address the issue with the Children's passports, which Respondent allowed to expire after she removed the Children from Mexico.

Petitioner seeks to recover $841.16 for the cost of his own flight to Savannah (on May 19, 2022) in order to retrieve the Children, and $1,799.10 for the cost of his and the Children's flights (on May 21, 2022) in order to return Mexico.[9]  (Doc. 84, p. 16; doc. 84-15; doc. 84-16.)  The Court has reviewed the supporting documentation and finds these amounts to be reasonable and to have been necessary for the return of the Children back to Mexico.[10]

---

[9]  Petitioner's brief makes several references to the fact that, for some or all of his flights, he flew into and out of the San Diego airport (and thus had to use ground transportation between Baja California, where he and the Children reside, and San Diego).  (See, e.g., doc. 84, pp. 6, 12, 15.) He does not, however, request (much less provide supporting documentation for) reimbursement of any expenses associated with that ground travel.

[10]  Petitioner also seeks reimbursement for a payment he made to a travel agency to arrange the various flights and ground transportation, which he says was ultimately vital given that there was a "short window

Finally, Petitioner seeks reimbursement for "other miscellaneous travel expenses such as meals and additional gasoline expenses from May 19, 2022[,] to May 21, 2022," and he directs the Court to an "image from [his] banking account noting each expense paid via [his] card [during that time period], (doc. 84, p. 14 (citing doc. 84-12)). Much of the text in this image is in Spanish, and Petitioner offers no translation, and his briefing makes no effort to describe or list what the charges were for, much less how or why they qualify as "necessary" under 22 U.S.C. § 9007(b)(3). Accordingly, the Court has no basis for concluding that any of these expenses were reasonable and necessary.

## II.   Whether an Award Would be "Clearly Inappropriate"

As outlined above, the Court has determined that Petitioner incurred $41,517.50 in reasonable and necessary attorneys' and paralegal fees, $3,115.58 in reasonable and necessary litigation-related expenses (i.e., the filing fee and the interpreter costs), and $4,306.94 in travel-related expenses, for a total award of $48,940.02. At this point the Court would ordinarily consider and assess any arguments presented by the Respondent as to why or how an award in this amount would be clearly inappropriate. Here, however, Respondent has declined to file any sort of response to Petitioner's Motion, and thus has failed to carry her "substantial burden of establishing that a fee award is clearly inappropriate," Rath, 898 F.3d at 1311. The Court is not aware (from its handling of the case) of a basis for concluding that, in this case, "a fee award would impose such a financial hardship that it would significantly impair the [R]espondent's ability to care for

---

of time to work through th[e] issue [with the passports] in order to have the Children returned to Mexico in a timely manner as ordered by the Court." (Doc. 84, p. 15.) There is no indication, however, that the travel agency was necessary for purposes of (or even involved in the process of) getting Petitioner and the Children to Atlanta and getting the passport issue resolved through the Consulate General. While it is certainly convenient to have a travel agency assist with flight arrangements, Petitioner has not shown that this expense was necessary or otherwise meets one of the categories of reimbursable expenditures under ICARA. See 22 U.S.C. § 9007(b)(3).

the [Children]," id., nor of a basis for finding that Respondent "had a good faith belief that her

actions in removing or retaining the [Children] were legal or justified." Id.  Accordingly, the Court

concludes that, considering the facts and circumstances of this case known by the Court, the award

of $48,940.02 is not clearly inappropriate.

### CONCLUSION

In light of the foregoing, the Court **GRANTS in part** Petitioner's Motion and Application

for Award of Fees and Costs, (doc. 84), and, pursuant to 22 U.S.C. § 9007(b)(3), awards Petitioner

Isai Ponce Munoz $48,940.02 in fees and expenses against Respondent Blanca Estela Buenrostro

Diaz.  To the extent Petitioner requested a greater amount of expenses, the Motion is **DENIED in**

**that part**.   There being no further requests for relief pending before the Court, the Court

**DIRECTS** the Clerk of Court to enter the appropriate judgment and to **CLOSE** this case.

**SO ORDERED**, this 9th day of January, 2023.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA